**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FINANCIAL HOLDINGS, INC., | ) | Case No. 15-51187 |
| | ) | |
| DEBTOR. | ) | Chapter 11 |
| | ) | |

**EXPEDITED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING POSTPETITION BORROWING AND GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO LENDER**

Comes Financial Holdings, Inc. as debtor and debtor in possession ("FHI" or the "Debtor"), and, pursuant to, *inter alia*, sections 105(a), 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky (the "Local Rules"), respectfully requests entry of both and Interim and Final Order Authorizing Postpetition Borrowing and Granting Liens and Superpriority Administrative Expense Status to Lender (the "Motion") authorizing the Debtor to obtain secured postpetition superpriority financing and use cash collateral (the "DIP Facility") on an interim and final basis pursuant to the terms of that certain Debtor-in-Possession Financing Agreement (the "DIP Credit Agreement") by and between the Debtor and WPB-AFB, LLC (the "Lender"). The DIP Credit Agreement is attached hereto as **Exhibit A**. The Debtor requests expedited relief because it currently has insufficient means to fund this bankruptcy, and without this bankruptcy, the value and benefit of the Bank (as defined below), the Debtor's only meaningful asset, is in danger of being lost. Attached hereto are the proposed interim order granting the relief requested herein (the "Interim Order") and the proposed final order granting the relief requested herein (the "Final Order"). The Interim Order

and the Final Order are attached hereto as **Exhibit B** and **Exhibit C**, respectively. In support of the Sale Motion, the Debtor respectfully states as follows:

### RELIEF REQUESTED AND OVERVIEW OF DIP FACILITY PURSUANT TO LOCAL RULE 4001-2

By and through this Motion, the Debtors seek entry of Interim and Final Orders, which authorize the Debtor to obtain secured postpetition financing by execution of the DIP Credit Agreement and to perform such other acts as may be necessary or appropriate in connection therewith. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Debtor provides as follows:

| | |
|---|---|
| Total Dollar Amount of Funds Requested | Up to $70,000 |
| Specific Uses of Requested Funds | Funds specifically restricted for payment of fees and expenses accrued/incurred by the Debtor's counsel and allowed by this Court and payment of Bankruptcy Court fees, United States Trustee fees, and noticing-related costs through the earlier of the consummation or the termination of the SPA (as defined below) |
| Interest Rate | As defined in the Senior Note (defined below), currently 3.25% |
| Maturity Events | The Debtor shall not be required to repay any amounts borrowed under the DIP Facility until one of the following occur: (i) the Debtor consummates a sale of all or substantially all of its assets pursuant to section 363 of the Bankruptcy Code or a plan of reorganization, (ii) the Bankruptcy Court enters an order converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, enters an order appointing a trustee or examiner in the Bankruptcy Case, enters an order ending Borrower's exclusive right to file a plan of reorganization, enters an order dismissing the Bankruptcy Case, enters an order approving bidding procedures without the Bid Protections or other bid protections acceptable to Purchaser (as that term is defined in the SPA), or enters an order an order approving the SPA subject to |

2

| | |
|---|---|
| | modifications not acceptable to Purchaser, (iii) a Breach (as that term is defined in the DIP Credit Agreement) or default by the Debtor occurs under the DIP Credit Agreement, or (iv) the SPA (as defined below) is terminated for any reason. |
| Debtor's Proposed Budget | The Debtor does not propose a budget since the DIP Facility is for specific and limited uses that are subject to Court approval or otherwise known to the Court (such as U.S. Trustee fees) |
| Collateral Securing DIP Facility | A second-position, perfected security interest in 100% of the Bank (defined below) stock, on which Lender has a first-position perfected security interest and a first-position, perfected security interest in the Debtor's other assets other than claims or causes of action arising under chapter 5 of the Bankruptcy Code. |
| Amount of Debt Owed to Lender | At least $14,352,488 |
| Value of Collateral | $7,375,000 for the Bank stock |
| Superpriority Administrative Claim | Lender shall have an allowed unsecured superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code for the DIP Loan and any deposits forfeited by alternative bidders as part of the contemplated sale of the collateral pursuant to section 363 of the Bankruptcy Code |
| Provisions Remaining in Effect if Interim Approval is Granted but Final Relief is Denied | Lender's perfected security interest in the collateral and the superpriority administrative expense claim described above |
| Adequate Protection for Prepetition Debt | No adequate protection is sought by or through the Motion |
| Automatic Stay | No waiver or modification of the automatic stay or rules related thereto is sought by or through the Motion |
| Chapter 5 Actions | Lender shall have no lien on any claim or cause of action arising under chapter 5 of the Bankruptcy Code |

3

**FILING AND JURISDICTION**

1.      On June 16, 2015 (the "Petition Date"), FHI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division (the "Bankruptcy Court").

2.      FHI is continuing in possession of its property and is managing its business and affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      No trustee, examiner or official committee of unsecured creditors has been appointed in this case.

**BACKGROUND**

**A.     General Case Background**

5.      FHI (formerly known as American Founders Bancorp, Inc.) is a single bank holding company, organized under the laws of the Commonwealth of Kentucky, that owns one hundred percent (100%) of the common stock of two subsidiaries, neither of which is a debtor in this case: (i) American Founders Bank, Inc. (the "Bank") and (ii) American Founders Statutory Trust I (the "Statutory Trust"). The Bank, in turn, owns 100% of the voting common stock of American Founders Loan Corporation ("AFLC" and together with the Bank and the Statutory Trust, the "Non-Debtor Subsidiaries").

6.      As of the Petition Date, FHI had outstanding secured indebtedness of at least $14,352,488 under that certain promissory note and related security documents (the "Senior Note") held by WPB-AFB, LLC ("WPB-AFB").

4

7. The Senior Note is secured by a first priority lien on FHI's 100% ownership interest in the Bank's Common Stock (the "Bank Common Stock" or the "Shares").

8. In April, 2006 the Statutory Trust issued $20.0 million of trust preferred securities (the "TruPS") to investors in a closed pooled private offering of 20,000 securities with liquidation amount of $1,000 per share. On the same day, FHI issued $20.6 million of Subordinated Debentures (the "Debentures") to the Statutory Trust in exchange for ownership of all of the common equity of the Statutory Trust and the proceeds of the TruPS sold by the Statutory Trust.

9. Wilmington Trust is the trustee of the Statutory Trust and the indenture trustee for the Debentures. FHI is not considered the primary beneficiary of the Statutory Trust, and accordingly the Statutory Trust is not consolidated in FHI's financial statements.

10. In addition to FHI's default under the Senior Note, FHI has been in default due to its failure to pay scheduled interest payments on the Debentures since September 15, 2013.

11. Thus, as of the Petition Date, FHI also had outstanding unsecured indebtedness of $26,278,844 under the Debentures issued to the Statutory Trust.

12. As of FHI's June 1, 2015 balance sheet, FHI had a negative value of $27,042,299.63. As of March 31, 2015, the Bank's Tier 1 Leverage and Total Risk-Based capital ratios were 5.60% and 8.86%, respectively, well below the respective 8% and 12% required under the Amended Consent Order entered into by the Bank, the Federal Deposit Insurance Corporation, and the Kentucky Department of Financial Institutions on October 31, 2012. Based upon newly implemented banking regulations, it is projected that the Bank's Tier 1 Leverage and Total Risk-Based capital ratios will decline without drastic action by the Bank.

13. In the face of pending regulatory and financial obligations, FHI filed the instant bankruptcy case in order to consummate a certain proposed sale transaction by which FHI will sell, with Court approval, its primary asset, 100% of the Shares in the Bank, to WPB-AFB or its assignee, or another qualified bidder who makes a higher and better bid for the Shares (the "Sale").

14. The Sale is part of a series of transactions; including the transfer of Lexington branches of the Bank to City National Bank Inc., and the sale of certain OREO properties to improve the Bank's capital structure, and the closing of each is dependent upon the closing of all (including necessary approval of the Court for the Sale and FDIC approval, as necessary).

15. The Sale and associated transactions (collectively, the "Global Transaction") are designed to save the Bank from FDIC receivership caused by a failure of the Bank while minimizing disruption to the Bank's depositors and community.

16. The Global Transaction is the only viable alternative FHI has identified after years of diligent and comprehensive marketing efforts to recapitalize the Bank through new capital, sell FHI as a whole, sell the Bank as a whole, or sell branches of the Bank in an effort to recapitalize.

17. In light of the current regulatory and financial challenges facing FHI, the Sale – along with the remaining components of the Global Transaction – represents the best avenue to maximize the value of FHI's assets while avoiding a failure of the Bank and is in the best interests of FHI and its estate.

18. Additional information about FHI's business and events leading to the Petition Date may be found in the Declaration of Barry C. Brauch in Support of First-Day Pleadings (the "Brauch Declaration"), which is incorporated herein by reference.

**B.     Need for DIP Facility under Interim and Final Orders and for Expedited Relief**

19. The Debtor has an urgent and immediate need to obtain postpetition financing. As set forth more fully in the Debtor's schedules, the Debtor does not have sufficient funds to pay the expenses necessary to administer this bankruptcy case.

20. Without the DIP Facility, the Debtor will be unable to pay counsel as approved by orders of this Court, pay quarterly U.S. Trustee fees, or provide for other expenses attendant to the bankruptcy process generally and chapter 11 proceedings specifically.

21. The Debtor cannot borrow funds due to its financial condition, especially since it has had no income in recent years.

22. Finally, Lender would not agree to lend money to the Debtor without a lien on the Stock, the Debtor's primary asset.

23. After a thorough investigation, including input from professionals, the Debtor determined that the Global Transaction is necessary and dependent, in part, on the sale of the Stock pursuant to orders of this Court.

24. Without the Court's approval of the DIP Facility at the outset of the case, the Debtor will suffer irreparable harm due to its inability to fund its bankruptcy, the Global Transactions will not occur, the value of the Bank will be lost, and the Bank's customers and community will likely suffer significant disruption or harm.

**RELIEF REQUESTED**

25. Section 364(c)(1) and (3) of the Bankruptcy Code are the basis for a superpriority administrative expense claim, a senior lien on unencumbered property, and a junior lien on property of the estate in favor of a postpetition lender if a debtor is unable to obtain unsecured credit as an administrative claim under section 503(b)(1), after notice and a hearing.

26. In order to obtain a court's authorization for post-petition credit pursuant to section 364(c), a debtor has the burden of establishing that: (1) it was unable to obtain unsecured credit; (2) the proposed credit transaction is necessary to preserve assets of the estate; and (3) the terms of the proposed credit agreement are fair, reasonable, and adequate in light of the circumstances of the debtor and the proposed lender. *See, e.g., In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

A. **The Debtor is Unable to Obtain Unsecured Credit**

27. In considering whether to approve proposed financing, a court must first examine the debtor's efforts to obtain financing on an unsecured basis. *See, e.g., In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). While a debtor is not required to show that it sought credit from every possible source, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Bankruptcy Code sections 364(a) and (b). *Id.*

28. Here, the Debtor is limited in its ability to seek financing. As set forth in its schedules, the Debtor has no assets of value other than the Stock, and the Stock is fully encumbered.

29. Moreover, the Debtor is more limited in its opportunities to obtain financing since due to the regulatory requirements and restrictions on the Debtor imposed by the Board of Governors of the Federal Reserve System and the Kentucky Department of Financial Institutions.

30. The Debtor has negotiated the terms of the proposed DIP Facility with WPB-AFB, its only lender.

B. **Approval of the DIP Facility Will Preserve the Primary Asset of the Estate**

31. The DIP Facility is absolutely necessary to preserve the value of the Debtor's estate, and without it, the Bank, the Debtor's primary asset, is subject to irreparable harm.

32. When considering a proposed postpetition financing arrangement, a court must focus upon whether the terms of the proposal prejudice the rights of creditors or grant the lender excessive control. *In re Defender Dep't Stores*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992).

33. However, a court must allow a debtor to exercise reasonable business judgment. *See, e.g., In re Ames Dep't Stores, Inc.,* 115 B.R. at 38.

34. In this case, the DIP Credit Agreement is the result of a reasonable exercise of the Debtor's business judgment. The Debtor has a valuable asset, the Stock, but does not currently generate revenue or otherwise have an ability to obtain cash. The Debtor therefore needs to borrow funds to ensure that it makes constructive use of the bankruptcy process.

**C.    The Terms of the DIP Credit Agreement are Fair, Reasonable, and Adequate**

35. Section 364 is a vehicle for a debtor to continue operating under the supervision of a bankruptcy court since debtors would face significant difficulties obtaining credit in a bankruptcy.

36. Here, the terms of the DIP Credit Agreement are fair and equitable to the Debtor. First, the interest rate charged by the Lender is the same as in the Senior Note and well-below the market rate. Second, the collateral to secure the DIP Facility is the Stock, and the Lender already has a prepetition interest in the Stock. Third, the Lender is undersecured as to its prepetition debt, so there is no equity in the Stock that could result in a benefit to other creditors. Finally, the funds will be used to satisfy normal and essential expenses and fees of the bankruptcy meaning that all parties in interest can benefit from the involvement and oversight of the Bankruptcy Court.

## NO PRIOR REQUEST

37. No prior motion for the relief requested herein has been made to this or any other court.

## NOTICE

38. Notice of this Motion has been given via overnight delivery and/or electronic mail to the following parties: the U.S. Trustee for the Eastern District of Kentucky; the Debtor; all secured creditors of the Debtor, specifically, WPB-AFB, LLC and Dinsmore & Shohl, as counsel to WPB-AFB LLC; all unsecured creditors of the Debtor, specifically, Wilmington Trust Company in its capacity as (a) Institutional Trustee and Delaware Trustee of the American Founders Statutory Trust I and (b) Debenture Trustee for the Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures Due 2036; and those equity shareholders of the Debtor holding a 1% or greater interest therein. In addition, notice of this Motion has also been given via U.S. Mail, postage prepaid, to the following parties: all equity shareholders of the Debtor with a 1% or less interest therein; the Internal Revenue Service; the Securities and Exchange Commission; the Kentucky Revenue Cabinet; the Kentucky Department of Financial Institutions; the FDIC; and the Federal Reserve Bank of St. Louis (collectively, the "Notice Parties"). The Debtor respectfully submits that, under the circumstances, no other or further notice is warranted.

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the Court (i) grant the Motion on an interim basis; (ii) enter the Interim Order authorizing the Debtor to enter into the DIP Credit Agreement; and (iii) schedule a final hearing on the Motion.

## NOTICE OF HEARING

Notice is hereby given that the foregoing Motion will be heard by the Court on June 19, 2015 at 9:00 a.m. (ET) or as soon thereafter as counsel may be heard in the United States Bankruptcy Court, 2nd Floor Courtroom, 100 East Vine Street, Lexington, Kentucky 40507.

Respectfully submitted,

STOLL KEENON OGDEN PLLC

/s/ Adam M. Back
Adam M. Back
Jessica L. Haurylko
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
Telephone: (859) 231-3000
Facsimile: (859) 253-1093
E-mail: adam.back@skofirm.com
         jessica.haurylko@skofirm.com

*Proposed Counsel for the Debtor and
Debtor in Possession*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served on this 16th day of June 2015, electronically upon all parties having entered an appearance in this case in accordance with the method established under this Court's CM/ECF Administrative Procedures, and to all Notice Parties via overnight delivery, postage prepaid, electronic mail, and/or regular U.S. Mail, postage prepaid, as further detailed hereinabove.

/s/ *Adam M. Back*
Proposed Counsel for the Debtor and
Debtor in Possession

115449.152190/4393335.7