## **DEBTOR-IN-POSSESSION FINANCING AGREEMENT**

This **DEBTOR-IN-POSSESSION FINANCING AGREEMENT** (the "Agreement"), dated the, 16th day of June, 2015, is entered into between and among **FINANCIAL HOLDINGS, INC.** ("Borrower"), a Kentucky corporation, and **WPB-AFB, LLC** ("Lender"), a Kentucky limited liability company.

## **Recitals**

**WHEREAS,** Borrower has encountered serious financial difficulties and has filed for bankruptcy protection (the "Bankruptcy") under Chapter 11 of 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), Case No. 15-51187 (the "Bankruptcy Case") currently pending before the Honorable Gregory R. Schaaf;

**WHEREAS,** Lender has agreed to provide post-petition debtor-in-possession financing (the "DIP Financing") to Borrower as more fully set forth herein and in an order or orders to be entered by the Bankruptcy Court in the Bankruptcy Case (the "Financing Orders"), which orders shall be in form and substance acceptable to Lender in Lender's sole discretion, to be used to pay ongoing professional fees and expenses to the extent all such fees and expenses are authorized by the Bankruptcy Court;

**WHEREAS,** Borrower and Lender each realize that the terms of this Agreement must be approved by the Bankruptcy Court and the Financing Orders entered by the Bankruptcy Court before this Agreement is enforceable.

## **Agreement**

1. Borrower and Lender each agree that the foregoing Recitals are true and correct.

2. The DIP Financing.

   a. Subject to Bankruptcy Court approval of this Agreement, and as otherwise set forth herein, Lender agrees to make available to Borrower a non-revolving draw facility of up to $70,000 at a rate equal to the non-default interest rate under the Senior Secured Loan (as that term is defined in the SPA, itself defined below), currently 3.25% (the "DIP Loan").

   b. The DIP Loan may be drawn by Borrower subject to the following conditions:

      i. up to $45,000 may be drawn if the consummation of that certain *Stock Purchase Agreement*, by and between Borrower and Lender, dated June 1, 2015 (the "SPA") and each of the other transactions of the Global Transaction (as that term is defined in the SPA) occurs;

    ii.    in the event that the Global Transaction is not consummated prior to the termination of the SPA, an amount may be drawn equal to up to the lesser of (x) $12,500 and (y) the fees and expenses of Borrower's Counsel allowed by final order of the Bankruptcy Court;

    iii.    regardless of whether the SPA is consummated, up to $10,000 may be drawn for Bankruptcy Court fees, United States Trustee fees, and noticing-related costs incurred through the earlier of (x) the consummation of the SPA and (y) the termination of the SPA; and

    iv.    regardless of whether the SPA is consummated, up to $15,000 may be drawn prior to the termination of the SPA for the payment of publication notice fees, in each case only upon the prior written consent of Lender, and for any third party noticing agent fees consented to by Lender, incurred through the earlier of (x) the consummation of the SPA and (y) the termination of the SPA, and each of the foregoing may be funded by Lender at Lender's option directly to the publication or noticing agent on behalf of Borrower;

c.    Borrower shall not be required to repay the DIP Loan until (each of the following constituting a "Maturity Event") (i) the Borrower consummates a sale of all or substantially all of its assets pursuant to §363 of the Bankruptcy Code or a plan of reorganization, (ii) the Bankruptcy Court enters an order converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, enters an order appointing a trustee or examiner in the Bankruptcy Case, enters an order ending Borrower's exclusive right to file a plan of reorganization, enters an order dismissing the Bankruptcy Case, enters an order approving bidding procedures without the Bid Protections or other bid protections acceptable to Purchaser (as that term is defined in the SPA), or enters an order an order approving the SPA subject to modifications not acceptable to Purchaser, (iii) a Breach (as that term is defined below) or default by Borrower occurs under this Agreement, or (iv) the SPA is terminated for any reason.

d.    Amounts borrowed under the DIP Financing and repaid to Lender may not be re-borrowed.

e.    Borrower will execute and deliver to Lender such additional documents and instruments as Lender may reasonably require to evidence the DIP Loan.

f.    Borrower shall provide Lender a summary within one week of the end of each month containing the professional fees and expenses incurred through the end of the prior month.

3. <u>Transfer of Funds Pursuant to This Agreement.</u>  The funds available under the DIP Loan shall be used by Borrower: (a) subject to section 2(b)(i) and (ii) above, only for the payment of the fees and expenses accrued/incurred by Stoll Keenon Ogden PLLC ("Borrower's Counsel") and allowed by final order of the Bankruptcy Court; (b) subject to section 2(b)(iii) above, only for the payment of Bankruptcy Court fees, United States Trustee fees, and noticing-related costs, and other administrative costs incurred through the earlier of (x) the consummation of the SPA and (y) the termination of the SPA; and (c) subject to section 2(b)(iv) above, only for the payment of publication notice fees, in each case only upon the prior written consent of Lender, and for any third party noticing agent fees consented to by Lender, incurred through the earlier of (x) the consummation of the SPA and (y) the termination of the SPA.

4. <u>Collateral Security and Superiority Administrative Claim.</u>  The DIP Loan shall be a secured obligation of the bankruptcy estate.  Subject to entry of the Financing Orders by the Bankruptcy Court, Borrower agrees to, and hereby does, grant to Lender, a security interest in its assets (existing now or hereafter), including but not limited to 6,594,674 shares of common stock of American Founders Bank, Inc. owned by Borrower as collateral security for the payment and performance by Borrower of the DIP Loan, and excluding claims or causes of action arising under chapter 5 of the Bankruptcy Code.  Subject to Bankruptcy Court approval of the Financing Orders, said security interest shall remain in full force and effect no matter the result of the Bankruptcy Case including, but not limited to, a dismissal of the Bankruptcy Case or a conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.  In addition, subject to entry of the Financing Orders by the Bankruptcy Court, Borrower agrees to grant Lender an allowed unsecured superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code for the DIP Loan and any deposits forfeited by alternative bidders pursuant to the Bidding Procedures (as that term is defined in the SPA), and said superpriority shall survive any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

5. <u>Expenses</u>.  Borrower agrees to reimburse Lender for all fees and expenses, including legal fees, incurred in enforcing this agreement.

6. <u>Breach of this Agreement.</u> A breach (a "<u>Breach</u>") of this Agreement shall be deemed to have occurred if either party to this Agreement breaches any term or covenant contained herein, and such Breach shall continue uncured for a period of at least five (5) business days after notice from the other party.

7. <u>Remedies Upon Breach and/or Maturity Event.</u> Upon the occurrence of any Breach by Lender, Borrower shall be entitled to enforce this Agreement through specific performance in the Bankruptcy Court or such other venue as may be appropriate. Upon the occurrence of any Maturity Event or Breach by Borrower: (a) the outstanding principal balance of the DIP Loan, all accrued and unpaid interest thereon, and any additional amounts owing to Lender under this Agreement including expenses under section 4 above, will be immediately due and payable in full without demand or notice of any kind; (b) Lender shall be entitled to exercise its remedies against Borrower; (c) Lender's obligation to provide the DIP Loan shall immediately terminate, provided, however, that any fees and expenses of Borrower's Counsel

properly incurred prior to such Breach or Maturity Event and allowed by final order of the Bankruptcy Court thereafter shall be payable from the DIP Loan (provided that, if the Global Transaction is consummated after such a Breach or Maturity Event, the fees and expenses of Borrower's Counsel incurred after a Breach or Maturity Date and allowed by final order of the Bankruptcy Court shall be payable from the DIP Loan, subject to the cumulative limit set in section 2(b)(i) above); and (d) interest on the DIP Loan shall thereafter accrue at a rate equal to the default rate of interest under the Senior Secured Loan.

8. <u>Representations and Warranties of Borrower.</u> Subject to the Bankruptcy Code, Borrower represents and warrants to Lender the following:

   (a) Borrower has all requisite power and authority to enter into and to carry out the transactions contemplated by, and perform its obligations under, this Agreement;

   (b) the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on Borrower's part; and

   (c) subject to the applicable provisions of the Bankruptcy Code, this Agreement and the undertakings set forth herein are the legal, valid, and binding obligation of Borrower, enforceable against it in accordance with its terms, subject to equitable principles, and bankruptcy, moratorium, and other laws affecting the rights of creditors generally.

9. <u>Representations and Warranties of Lender.</u> Lender represents and warrants to Borrower as follows:

   (a) Lender has all requisite power and authority to enter into and to carry out the transactions contemplated by, and perform its obligations under, this Agreement;

   (b) the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on Lender's part; and

   (c) subject to the applicable provisions of the Bankruptcy Code, this Agreement and the undertakings set forth herein are the legal, valid, and binding obligation of Lender, enforceable against it in accordance with its terms, subject to equitable principles, and bankruptcy, moratorium, and other laws affecting the rights of creditors generally.

10. <u>Representation by Counsel.</u> Each party hereto acknowledges that it has been represented by counsel in connection with this Agreement. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the parties hereto.

4393146.4

11. <u>Governing Law.</u> This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Kentucky, without reference to the conflicts of law provisions thereof and, to the extent applicable, the Bankruptcy Code.

12. <u>Counterparts.</u> This Agreement may be executed in counterpart, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

13. <u>Modifications in Writing.</u> No modification or amendment of the terms of this Agreement shall be valid unless such amendment is in writing and signed by Borrower and Lender.

14. <u>Headings.</u> The headings of the paragraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

**IN WITNESS WHEREOF,** Borrower and Lender have caused this Agreement to be executed as of the date first set forth above.

**FINANCIAL HOLDINGS, INC.**

By:

Its:

**WPB-AFB, LLC**

By:

Its:

**115449.152190/4393146.4**

6

4393146.4