**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| FINANCIAL HOLDINGS, INC., ) | Case No. 15-51187 |
| ) | |
| DEBTOR. ) | Chapter 11 |
| ) | |

**ORDER APPROVING (A) BIDDING PROCEDURES, (B) BIDDING PROTECTIONS, AND (C) THE FORM AND MANNER OF NOTICE OF THE SALE OF THE BANK COMMON STOCK AND GRANTING OTHER RELATED RELIEF**

This matter having come before the Court on the motion of Financial Holdings, Inc., as debtor and debtor in possession (the "Debtor") for an Order (I) Approving (A) Bidding Procedures, (B) Bidding Protections, (C) Approving WPB-AFB, LLC as the Stalking Horse Bidder, (D) the Form and Manner of the Notice of the Sale of the Bank Common Stock, and (E) Other Related Relief; and (II) Authorizing and Approving the Sale of the Bank Common Stock Free and Clear of Liens, Claims and Encumbrances (the "Sale Motion")[1]; and the Debtor, by the Sale Motion, having also requested the entry of an order (the "Bidding Procedures Order") (a) approving bidding procedures in connection with the Sale (the "Bidding Procedures"); (b) approving the Bidding Protections, the Minimum Overbid and bidding increments of no less than $100,000.00; (c) approving the form and manner of the notice that will be filed with this Court and served on all creditors and parties-in-interest regarding the Sale and the Sale Hearing (the "Sale Notice"); and (d) scheduling a hearing at which this Court will consider approval of the Sale; and the Debtor having determined that approving the Bidding Procedures, authorizing the Bidding Protections, and granting the other relief requested in the Sale Motion will induce

---

[1] All capitalized terms used, but not otherwise defined herein, shall have the meaning attributed to them in the Sale Motion.

competitive bidding for the Shares and will maximize the value of the Debtor's estate; and this Court having considered (i) the Sale Motion and exhibits thereto; (ii) arguments of counsel and all evidence tendered in support of the Bidding Procedures Order; and (iii) the opposition, if any, at a hearing for such purpose (the "Bidding Procedures Hearing"); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that notice of the Sale Motion has been given as set forth in the Sale Motion and that no other or further notice need be given; and upon the record of the Bidding Procedures Hearing; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.  This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 1134 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N), and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The Debtor has articulated good and sufficient reasons for approving the (i) Bidding Procedures; (ii) Bidding Protections; (iii) Stalking Horse Bidder; and (iv) form and manner of the Sale Notice.

C.  The Debtor has articulated good and sufficient reasons for scheduling the Sale Hearing.

D.  The Bidding Protections are beneficial to the Debtor's estate because they will ensure a competitive and efficient bidding process, they were necessary to induce the Stalking Horse Bidder to enter into the SPA, and they will enhance the Debtor's ability to maximize the

---

[2] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. *See* Fed. R. Bankr. P. 7052.

value of its assets for the benefit of its creditors. The terms and conditions of the Bidding Protections are fair and reasonable and are the product of good faith, arm's length negotiations between the Debtor and the Stalking Horse Bidder.

E.  Under the circumstances, and particularly in light of the extensive prior marketing of the Shares, the Bidding Procedures constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit and pursue higher or otherwise better offers for the Shares.

F.  Time is of the essence with respect to entry of this Bidding Procedures Order.

G.  The Sale Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Sale Motion is granted to the extent set forth herein.

2.  The Bidding Procedures set forth in this Bidding Procedures Order shall be utilized in the marketing, negotiating, and consummating the sale of the Shares free and clear of all claims, liens, interests, and encumbrances. For the avoidance of doubt, the entry of this Bidding Procedures Order does not preclude submission of proposals for other types of transactions in lieu of the Debtor's current proposed sale of the Shares.

**Bidding Procedures**

3.  The Bidding Procedures, as set forth in **Exhibit 1** hereto (and incorporated herein by reference as if fully set forth in this Bidding Procedures Order), are hereby approved and shall govern all proceedings related to the Sale, the SPA, and any subsequent bids for the Shares in this case.

4. The failure to specifically include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5. Any person wishing to submit a higher or otherwise better offer for the Shares must do so in accordance with the terms of the Bidding Procedures.

6. The Debtor's investment banker shall take good faith and customary marketing measures prior to the auction, based on its reasonable judgment, including reaching out to potential bidders. Prior to the bid deadline and upon the request of Wilmington Trust, the Debtor shall provide Wilmington Trust with a list of the parties contacted by the Debtor's investment banker and the mode of contact for each party (phone, email, post, multiple modes, etc.)

**Bidding Protections**

7. The Bidding Protections described in the SPA, the Sale Motion, and the Bidding Procedures (the "Sale Documents") are hereby approved and shall be enforceable as stated therein.

8. WPB-AFB, LLC is hereby authorized to serve as the Stalking Horse Bidder.

9. The Break-Up Fee is hereby approved, as an allowed administrative expense, in the amount of $429,121.87, which amount represents 3% of the maximum credit bid, and the Expense Reimbursement is hereby approved in an amount capped at $350,000.00, with such fees payable in accordance with the terms of the Sale Documents.[3] The Debtor is hereby authorized and directed to pay the Bidding Protections, subject to the terms and conditions of the Sale Documents; provided, however, that in no event will the Bidding Protections be paid in the

---

[3] In the event of any conflict between the terms of the SPA, the Sale Motion, and the Bidding Procedures as they each relate to the Bidding Protections, the applicable provisions of the SPA shall govern.

4

absence of a Sale Order, with the exception that any Overbidder's Deposit forfeited to the Debtor in accordance with the Bidding Procedures shall be immediately paid to the Stalking Horse Bidder subject to the terms and conditions set forth in the Bidding Procedures.  Notwithstanding the definition of Purchase Price in the SPA, the stalking horse bid by WPB-AFB, LLC shall be deemed to be $14,352,488 (and obligations to WPB-AFB, LLC under the Senior Secured Loan in excess of that amount, if any, may be credit bid by WPB-AFB, LLC during the auction); *provided*, *however*, that WPB-AFB, LLC is not thereby waiving any obligations owed by the Debtor to WPB-AFB, LLC under the Senior Secured Loan beyond its stalking horse bid; *provided*, *further*, that the stalking horse bid by WPB-AFB, LLC may be reduced thereafter in consultation with Wilmington Trust (as that term is defined below), upon the consent of the Debtor and WPB-AFB, LLC, and after providing notice of such change to the notice parties set forth below.

**Sale Hearing**

10. The Sale Hearing to consider approval of the Sale to the Stalking Horse Bidder (or to the Successful Bidder if an Auction is held) will take place on August 12, 2015 at 9:00 a.m. (prevailing Eastern Time) in the courtroom of the Honorable Gregory R. Schaaf in the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division, 100 East Vine Street, Second Floor, Lexington, Kentucky 40507.  Objections to the entry of an order approving the Sale and the remaining relief requested in the Sale Motion must be made in writing and must be filed with the Court and served upon the following parties on or before August 11, 2015, at 11:00 a.m. (prevailing Eastern Time):  (i) counsel to the Debtor: Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507 (Attn: Joseph Scott, joseph.scott@skofirm.com; Adam M. Back, adam.back@skofirm.com and Jessica L. Haurylko, jessica.haurylko@skofirm.com); (ii) counsel to the Purchaser:  Dinsmore & Shohl

5

LLP, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202 (Attn: Michael G. Dailey, michael.dailey@dinsmore.com, Uday Gorrepati, uday.gorrepati@dinsmore.com, and Susan Zaunbrecher, susan.zaunbrecher@dinsmore.com); (iii) counsel to any official committee appointed in this case; (iv) counsel to Wilmington Trust Company, in its capacity as (a) Institutional Trustee and Delaware Trustee of the American Founders Statutory Trust I and (b) Debenture Trustee for the Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures Due 2036 ("Wilmington Trust"), Kilpatrick, Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Todd C. Meyers, tmeyers@kilpatricktownsend.com and Shane G. Ramsey, sramsey@kilpatricktownsend.com) and DelCotto Law Group PLLC, 200 North Upper Street, Lexington, Kentucky 40507 (Attn: Laura Day DelCotto, ldelcotto@dlgfirm.com) and (v) the Office of the United States Trustee.

## NOTICE

11.     The form and manner of notice of the Sale Notice, as described in the Sale Motion, shall be good and sufficient, and no other or further notice thereof shall be required, if given as follows:

(a)     The Debtor shall, within three (3) business days of entry of this Bidding Procedures Order, serve a copy of the Sale Notice (substantially in the form attached as **Exhibit 2** hereto) (the "Sale Notice") by U.S. mail, postage pre-paid, upon the following parties: the U.S. Trustee for the Eastern District of Kentucky; the Debtor; all secured creditors of the Debtor, specifically, WPB-AFB, LLC and Dinsmore & Shohl, as counsel to WPB-AFB LLC; all unsecured creditors of the Debtor, specifically, Wilmington Trust Company in its capacity as (a) Institutional Trustee and Delaware Trustee of the American Founders Statutory Trust I and (b) Debenture Trustee for the Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures Due 2036 and Kilpatrick

6

Townsend & Stockton LLP, as counsel; all equity shareholders of the Debtor; the Internal Revenue Service; the Kentucky Revenue Cabinet; the Kentucky Department of Financial Institutions; the FDIC; the Securities and Exchange Commission; and the Federal Reserve Bank of St. Louis.

(b)     The Debtor shall, within three (3) business days of entry of this Bidding Procedures Order, serve a copy of the Sale Notice and the Bidding Procedures by electronic mail, or U.S. mail, postage pre-paid, upon the approximately 110 parties who were contacted prepetition for purposes of marketing the Debtor and/or the Bank. The copy of the Sale Notice provided to these parties shall include, in bold and in a prominent position on the first page, the contact information for the Debtor's investment banker, as well as an invitation to conduct due diligence and participate in the sale process.

(c)     Within ten (10) days after the date the Bidding Procedures Order is entered, or as soon thereafter as is practicable, the Debtor shall cause notice (substantially in the form of the notice attached hereto as **Exhibit 3**) to be published in the New York Times, the Lexington Herald Leader, and the Louisville Courier Journal (the "<u>Publication Notice</u>"). This Publication Notice shall constitute an additional component of the Sale Notice.

12.     Notwithstanding Bankruptcy Rules 6004 and 6006 or otherwise, this Bidding Procedures Order shall be effective and enforceable immediately upon entry.

13.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order.

14. Nothing contained in this Bidding Procedures Order shall be deemed to deprive any party in interest of the right to object to the Sale itself, all of which rights are expressly reserved by this Bidding Procedures Order.

Tendered by:

STOLL KEENON OGDEN PLLC

/s/ Adam M. Back
Adam M. Back
Jessica L. Haurylko
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
Telephone: (859) 231-3000
Facsimile: (859) 253-1093
E-mail: adam.back@skofirm.com
jessica.haurylko@skofirm.com

*Interim Counsel for the Debtor and Debtor in Possession*

**Pursuant to KYEB LBR 9022-1(b), tendering counsel shall cause a copy of this Order to be served on all non-ECF parties entitled to notice and shall file a certificate of service stating the names, manner and date of service within 7 days of the entry hereof.**

115449.152190/4400374.3

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of all of Financial Holdings, Inc.'s (the "Debtor") shares in its wholly owned non-debtor subsidiary bank, American Founders Bank, Inc. (as described more fully herein, and including all associated rights, powers, and assets, the "Shares") in connection with the Debtor's chapter 11 case pending in the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division (the "Bankruptcy Court") under case number 15-51187.

The Debtor has agreed to the terms of that certain stock purchase agreement dated June 1, 2015 (the "SPA") between the Debtor and WPB-AFB, LLC (the "Stalking Horse Bidder"), pursuant to which the Stalking Horse Bidder has agreed to acquire the Shares on the terms and conditions specified therein (together with the schedules and related documents thereto, the "Stalking Horse Agreement"). The stalking horse bid by WPB-AFB, LLC is $14,352,488. The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein. Capitalized terms used, but not otherwise defined herein, shall have the meaning attributed to them in the Stalking Horse Agreement.

## I.     ASSETS TO BE SOLD

The Debtor seeks to complete a sale (the "Sale") of all of the shares of the common stock of its wholly owned non-debtor subsidiary bank, American Founders Bank, Inc., a Kentucky state banking corporation duly licensed by the Kentucky Department of Financial Institutions to engage in commercial banking (the "Bank").

## II.    BID PROCEDURES

In order to ensure that the Debtor receives the maximum value for the Shares, the Stalking Horse Agreement is subject to higher or better offers, and, as such, the Stalking Horse Agreement will serve as the "stalking horse" bid for the Shares. Within three business days after the Bidding Procedures are approved by the Bankruptcy Court, the Bidding Procedures will be sent to the approximately 110 parties who were contacted prepetition for purposes of marketing the Debtor and/or the Bank.

### A.    Documentation Necessary for Qualification as an Overbidder

In order to be qualified to receive any confidential information from the Debtor or the Bank, to submit an Initial Overbid (as defined below), and to participate in an auction with respect to the Shares (the "Auction"), a potential bidder (each, an "Overbidder") must submit each of the following to the Debtor on or before the Bid Deadline (as defined below):

(1)    An executed confidentiality agreement which shall inure to the benefit of the Successful Bidder (as defined below); and

(2)    Current audited financial statements and the latest unaudited financial statements of the Overbidder or, if the Overbidder is an entity formed for the purpose of acquiring the Shares, current audited financial statements and the latest unaudited financial statements of the equity holders or sponsors of the Overbidder who will

guarantee the obligations of the Overbidder, or such other form of financial disclosure as the Debtor may require, after consultation with Wilmington Trust Company ("Wilmington"),[1] in each case that will allow the Debtor, after consultation with Wilmington,[2] to make a reasonable determination that the Overbidder has the capability to (A) consummate the Sale for a price not less than the Minimum Overbid (as defined below), (B) effect the recapitalization of the Bank required by the Regulators, and (C) obtain all necessary regulatory approvals with respect to the ownership of the Shares and operation of the Bank on a timely basis.

All materials submitted to the Debtor by an Overbidder in accordance with this Section II shall be provided by the Debtor to Wilmington within one (1) business day of receipt of such materials by the Debtor.

The Debtor shall not deny any potential purchaser the right to qualify as an Overbidder without first consulting with Wilmington.

### B. Provisions Governing Qualification of Overbids

In order to participate at the Auction, an Overbidder must submit the following documents to the Notice Parties so as to be received by the Bid Deadline (each as defined below) and meet the following conditions:

(1) A proposed purchase agreement (the "Competing Agreement"), executed by the Overbidder in a form substantially similar to that set forth in the Stalking Horse Agreement, together with a redlined, marked copy showing all changes between the Competing Agreement and the Stalking Horse Agreement, which Competing Agreement provides for a cash purchase price that exceeds $14,352,488 by at least the amount of the Bid Protections, plus the $150,000.00 Wind Down Amount (as defined in the SPA) (collectively, the "Minimum Overbid"). The Competing Agreement shall also: (A) provide for the recapitalization of the Bank through an equity investment in a form and on terms acceptable to the applicable Governmental Authorities; (B) provide for the assumption and payment of the Wind-Down Amount; (C) remain irrevocable until the closing of the Sale; and (D) contain a proposed closing date that is not later than the earlier of (i) one hundred and eighty (180) days after the date of the Competing Agreement and (ii) five (5) days after receipt of regulatory approval for the proposed transaction (the "Outside Date").

(2) A cashier's check made payable to the order of the Debtor in the amount of ten percent (10%) of the purchase price contained in the Competing Agreement (the "Overbidder's Deposit"), which if the Overbidder is the Successful Bidder (as defined below), will be retained by the Debtor as a non-refundable good faith deposit for application against the purchase price at the closing of the Sale, or, if the Overbidder is

---

[1] To the extent an official committee is formed in the Debtor's case, such committee shall be entitled to the rights afforded Wilmington under these Bidding Procedures, in addition to any other rights such committee may seek.
[2] The Debtor will consult with Wilmington as set forth in the Bidding Procedures; however, nothing herein is intended to limit or should be deemed to limit the Debtor's ability to make all decisions and determinations and take all actions required or contemplated by the Bidding Procedures based upon the Debtor's reasonable business judgment without the need for approval or concurrence from Wilmington.

2

not the Successful Bidder, will be returned to the Overbidder in accordance with these Bidding Procedures. The Overbidder's Deposit provided by each Overbidder shall not earn interest.

(3) Provide adequate evidence, based upon the Debtor's reasonable business judgment, after consultation with Wilmington, that the Overbidder has the financial ability to pay the purchase price and the amount necessary to effect the recapitalization of the Bank required by the Regulators set forth in the Competing Agreement.

(4) Terms and conditions that are, in the aggregate, higher and better than the terms and conditions of the Stalking Horse Agreement, as determined by the Debtor, after consultation with Wilmington; provided, however, that if such terms and conditions include regulatory contingencies, such contingencies shall not disqualify a Competing Agreement, but shall be taken into consideration when such Competing Agreement is evaluated; provided further, however, that such terms and conditions cannot include contingencies related to due diligence, financing, bid protections, expense reimbursements or corporate consents or approvals.

(5) Provide adequate evidence, based upon the Debtor's reasonable business judgment, after consultation with Wilmington, that the Overbidder is capable and qualified of unconditionally performing all obligations under the Competing Agreement, including, but not limited to, adequate evidence that the Overbidder has or is capable of obtaining all regulatory approvals required to close the Sale not later than the Outside Date.

(6) Provide adequate evidence, in a form satisfactory to the Debtor, after consultation with Wilmington, that establishes the good faith of the Overbidder within the meaning of Section 363(m) of the Bankruptcy Code.

A bid received from an Overbidder that meets the criteria set forth above, as determined by the Debtor, after consultation with Wilmington, will be considered a "Qualified Bid." The Stalking Horse Bidder and any Overbidder that submits a Qualified Bid (an "Initial Overbid") shall each be deemed a "Qualified Bidder" and may bid for the Shares at the Auction. Any entity that fails to submit a timely conforming Qualified Bid shall be disqualified from bidding for the Shares at the Auction. Each Overbidder that submits a Qualified Bid shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all due diligence regarding the Debtor, the Bank, and the Shares prior to making any bids; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor, the Bank, the Shares, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the agreement entered into by such Successful Bidder with the Debtor providing for the Successful Bid.

3

### C.     Bid Deadline

An Overbidder that desires to make an Initial Overbid shall deliver written copies of its bid to the following parties (the "Notice Parties") so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on August 6, 2015 (the "Bid Deadline"): (i) counsel to the Debtor: Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507 (Attn: Adam M. Back, adam.back@skofirm.com and Jessica L. Haurylko, jessica.haurylko@skofirm.com); (ii) financial advisor to the Debtor: Austin Associates, LLC, 7205 W. Central Ave., Toledo, Ohio 43617 (Attn: Craig Mancinotti, craig.mancinotti@austinassociates.com); (iii) counsel to Wilmington Trust Company, in its capacity as (a) Institutional Trustee and Delaware Trustee of the American Founders Statutory Trust I and (b) Debenture Trustee for the Fixed/Floating Rate Junior Subordinated Deferrable Interest Debentures Due 2036, Kilpatrick, Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Todd C. Meyers, tmeyers@kilpatricktownsend.com and Shane G. Ramsey, sramsey@kilpatricktownsend.com) and DelCotto Law Group PLLC, 200 North Upper Street, Lexington, Kentucky 40507 (Attn: Laura Day DelCotto, ldelcotto@dlgfirm.com); (iv) counsel to any official committee formed in this case; and (v) counsel to the Stalking Horse Bidder: Dinsmore & Shohl, LLP, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202 (Attn: Michael G. Dailey, michael.dailey@dinsmore.com, Uday Gorrepati, uday.gorrepati@dinsmore.com, and Susan Zaunbrecher, susan.zaunbrecher@dinsmore.com).

### D.     No Competing Bid

If no timely Qualified Bid is submitted, the Debtor shall not conduct an Auction, the Stalking Horse Bidder will be named the Successful Bidder (as defined below) following the Bid Deadline and the Debtor shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse Agreement, including the sale of the Shares to the Stalking Horse Bidder.

### E.     Auction Procedures

If one or more timely Qualified Bids is received, the Debtor will conduct the auction of the Shares on August 10, 2015 at 9:00 a.m. (prevailing Eastern Time) at the offices of Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction, in which the Stalking Horse Bidder and all other Qualified Bidders may participate. The Auction shall be governed by the following procedures:

(1)     the Auction will be conducted openly and all creditors will be permitted to attend; provided, however, that only Qualified Bidders may participate in the Auction;

(2)     each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the Sale and (ii) that it consents to the jurisdiction of the Bankruptcy Court in regards to all matters related to the Auction or the Sale of the Shares;

(3)     for the purpose of comparing bids, each bid by a Qualified Bidder (other than the Stalking Horse Bidder) shall be automatically reduced by an amount equal to the Bid Protections;

4

(4) bidding will commence at the amount of the highest or otherwise best bid submitted by a Qualified Bidder, as determined by the Debtor, after consultation with Wilmington;

(5) each subsequent bid shall be in increments of no less than $100,000.00 above the immediately preceding bid, and the Debtor will evaluate each such bid in consultation with Wilmington;

(6) the Auction shall be conducted openly and each bidder will be informed of the terms of the previous bid determined by the Debtor, after consultation with Wilmington, to have been the highest and otherwise best bid;

(7) the bidding at the Auction shall be transcribed;

(8) The Stalking Horse Bidder shall have the right to credit bid up to the full outstanding amount of its pre-petition loan plus the $150,000.00 Wind Down Amount as provided in the SPA and the amount of the DIP Loan. For the avoidance of doubt, no Qualified Bidder other than the Stalking Horse Bidder shall have the right to credit bid at the Auction.

(9) The Auction shall continue until there is only one bid that the Debtor determines, after consultation with Wilmington, subject to Bankruptcy Court approval, is the highest or otherwise best bid (the "Successful Bid") from among the bids submitted by the Qualified Bidders at the Auction. The bidder submitting such Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities as the purchaser, as set forth in the Competing Agreement or the Stalking Horse Agreement, as applicable, with the amount of the Successful Bidder's final bid substituted as the purchase price in the applicable agreement.

(10) The Debtor, after consultation with Wilmington, at the conclusion of the Auction, shall also determine and identify the second highest or otherwise best Qualified Bid (the "Back-up Bid") and the Qualified Bidder submitting such bid (the "Back-up Bidder"). If the Successful Bid is terminated or fails to close within the time period specified in the Successful Bid, the Debtor, after consultation with Wilmington, shall be authorized, but not required, to consummate the sale transaction with the Back-up Bidder. The Back-up Bid shall remain open until the earlier of (i) the first (1st) business day following the consummation of the Sale and (ii) the twentieth (20th) day after entry of the Sale Order; provided, however, that delays associated with the Successful Bidder's efforts to obtain necessary regulatory approval may result in the Back-up Bid remaining open for a longer period of time if Debtor, after consultation with Wilmington, and the Back-up Bidder so agree in writing.

(11) In addition to the procedures outlined above, the Debtor, after consultation with Wilmington, may employ and announce at the Auction other procedural rules that are reasonable under the circumstances for conducting the Auction; provided, however, that such rules are (i) not materially inconsistent with these Bidding Procedures and (ii) disclosed to each Qualified Bidder at the Auction.

5

Within one (1) business day after conclusion of the Auction, the Debtor shall file with the Court and serve upon all Qualified Bidders, and other entities set forth in the Bidding Procedures Order, a notice identifying the Successful Bidder and the principal terms of the Successful Bid and the Back-up Bidder and the principal terms of the Back-up Bid.

### F.     Sale Hearing

The Successful Bid will be subject to approval of the Bankruptcy Court, through entry of a sale order (the "Sale Order"), at a hearing that will take place at 9:00 a.m. (prevailing Eastern Time) on August 12, 2015 in the Bankruptcy Court (the "Sale Hearing").  The closing of the sale of the Shares to the Successful Bidder shall occur on the date as provided in, and otherwise in accordance with, the Stalking Horse Agreement or the Competing Agreement, as applicable. The Successful Bidder shall have standing and is deemed to be a party-in-interest with standing to be heard on any motion, hearing or other matter related to the Auction, the Successful Bid, or other transfer and sale of the Shares.

### G.     Return of Allowed Bidder's Deposit

(a)     Except as otherwise provided below with respect to any Successful Bidder or Back-up Bidder, the Overbidder's Deposit of each Overbidder shall be returned within three (3) business days of the Auction, or, if no Auction is held, within three (3) business days after the Sale Hearing.

(b)     The Overbidder's Deposit of the Successful Bidder shall be held until the closing of the Sale and applied in accordance with the Successful Bid.  If any sale to a Successful Bidder other than the Stalking Horse Bidder fails to close on or before the Outside Date, or the Competing Agreement with such Successful Bidder is otherwise terminated for whatever reason, such Successful Bidder's Overbidder's Deposit shall be forfeited to, and retained by, the Debtor and applied as follows: first, to the Stalking Horse Bidder to pay the Bid Protections and any debtor-in-possession financing provided by it; second, any amounts remaining more than $50,000 to pay obligations under the Senior Secured Loan; and third, as directed by order of the Bankruptcy Court.  The Overbidder's Deposit of the Back-up Bidder shall be held until the earlier of the closing of the Sale to the Successful Bidder or twenty (20) days after entry of the Sale Order, or as the Bankruptcy Court may otherwise direct or the Debtor and Back-up Bidder may agree subject to Section E (10) herein.

## III.    THE BID PROTECTIONS

The Bid Protections shall be payable as provided under the terms of the Stalking Horse Agreement and the Bidding Procedures Order.

## IV.     JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, and/or any other matter that in any way relates to the foregoing.

115449.152190/4400749.2

6

US2008 7210415 4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| FINANCIAL HOLDINGS, INC., | ) Case No. 15-51187 |
| | ) |
| DEBTOR. | ) Chapter 11 |
| | ) |

**NOTICE OF AUCTION AND SALE HEARING**

  **PLEASE TAKE NOTICE that if you are interested in conducting due diligence regarding this matter, you may contact Austin Associates, LLC, 7205 West Central Ave., Toledo, OH 43617 (ATTN: Craig Mancinotti (craig.mancinotti@austinassociates.com) for more information.**

  PLEASE TAKE FURTHER NOTICE that on June 16, 2015, Financial Holdings, Inc., as debtor and debtor in possession ("FHI" or the "Debtor") filed with the Bankruptcy Court its Motion for an Order (I) Approving (A) Bidding Procedures, (B) Bidding Protections, (C) WPB-AFB, LLC or its Assignee as Stalking Horse Bidder, (D) the Form and Manner of the Notice of the Sale of the Bank Common Stock, and (E) Other Related Relief; and (II) Authorizing and Approving the Sale of the Bank Common Stock Free and Clear of Liens, Claims and Encumbrances (the "Sale Motion").[1]

  PLEASE TAKE FURTHER NOTICE that on July 1, 2015, the Bankruptcy Court entered the order approving certain relief requested in the Sale Motion (the "Bidding Procedures Order"), which among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which certain assets of the Debtor are to be sold.

  PLEASE TAKE FURTHER NOTICE that, in accordance with the terms of the Bid Procedures Order, the Debtor may conduct an auction (the "Auction") starting at 9:00 A.M. (prevailing Eastern Time) on August 10, 2015 (the "Auction Date") at the offices of Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507. Only parties that have submitted a Qualified Bid by no later than 5:00 p.m. (prevailing Eastern Time) on August 6, 2015 (the "Bid Deadline") will be permitted to participate in and/or make any statements on the record at the Auction.

  PLEASE TAKE FURTHER NOTICE that at 9:00 A.M. (prevailing Eastern Time) on August 12, 2015 or as soon thereafter as counsel may be heard (the "Sale Hearing"), the Debtor shall appear before the Bankruptcy Court and seek entry of an order: (i) approving the SPA or the Competing Agreement; (ii) authorizing the sale of the Shares to the Successful Bidder at the Auction; and (iii) granting certain related relief.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning attributed to them in the Sale Motion.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Sale Motion as it relates to the Sale must: (a) be set forth in writing describing the basis thereof and must be filed with the Bankruptcy Court electronically; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and (c) be served upon: (i) counsel to the Debtor: Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507 (Attn: Adam M. Back, adam.back@skofirm.com and Jessica L. Haurylko, jessica.haurylko@skofirm.com); (ii) counsel to the Purchaser: Dinsmore & Shohl LLP, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202 (Attn: Uday Gorrepati, uday.gorrepati@dinsmore.com, Michael G. Dailey, michael.dailey@dinsmore.com, and Susan Zaunbrecher, susan.zaunbrecher@dinsmore.com); (iii) counsel to any official committee appointed in this case; and (iv) the Office of the United States Trustee, so as to be received no later than 11:00 A.M. (prevailing Eastern Time) on August 11, 2015 (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that the failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Shares to the Successful Bidder and the other relief requested in the Motion, and shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of the Shares, and the Debtor's consummation and performance of the SPA or Competing Agreement, if authorized by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that this Sale Notice is subject to the full terms and conditions of the Sale Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtor encourages the parties in interest to review such documents in their entirety. Copies of these documents will be provided upon written request to counsel for the Debtor, Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, Kentucky 40507 (Attn: Rhonda Houston, rhonda.houston@skofirm.com).

115449.152190/4400806.1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY, LEXINGTON DIVISION**

IN RE: FINANCIAL HOLDINGS, INC., DEBTOR
Chapter 11 Case No. 15-51187

### NOTICE OF AUCTION OF AMERICAN FOUNDERS BANK AND SALE HEARING

PLEASE TAKE NOTICE that, on July 1, 2015, the Bankruptcy Court entered an order establishing bidding procedures for the sale of Financial Holdings, Inc.'s (as debtor and debtor-in-possession, the "Debtor") wholly-owned subsidiary, American Founders Bank, Inc. (a Kentucky banking corporation, "AFB").

PLEASE TAKE FURTHER NOTICE that the Debtor may conduct an auction starting at 9:00 A.M. (prevailing Eastern Time) on August 10, 2015 at the offices of Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, KY 40507. Only parties that have submitted a qualified bid by no later than 5:00 p.m. (Eastern Time) on August 6, 2015 will be permitted to participate in or make any statements on the record at the auction.

PLEASE TAKE FURTHER NOTICE that at 9:00 A.M. (Eastern Time) on August 12, 2015 or as soon thereafter as counsel may be heard, the Debtor shall appear before the Bankruptcy Court and seek entry of an order approving the sale of AFB.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the sale of AFB must: (a) be set forth in writing describing the basis thereof and must be filed with the Bankruptcy Court electronically no later than 11:00 A.M. (Eastern Time) on August 11, 2015.

PLEASE TAKE FURTHER NOTICE that the failure to file an objection before the deadline shall be deemed a consent to the sale of AFB and bar the assertion of any objection to the sale.

PLEASE TAKE FURTHER NOTICE that this notice is subject to the full terms and conditions of the order, and the Debtor encourages the parties in interest to review the order. Copies of the sale motion and order will be provided upon written request to counsel for the Debtor, Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, KY 40507 (Attn: Rhonda Houston, rhonda.houston@skofirm.com)

115449.152190/4391998.2

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Wednesday, July 01, 2015
(grs)